# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JENNINGS TRANSMISSION SERVICE OF GOLDSBORO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>JASPER ENGINES & TRANSMISSIONS,<br><br>Third-Party Defendant,<br><br>and<br><br>READY BUILT DISTRIBUTORS, INC.,<br><br>Third-Party Defendant. | No. 05-1209 C<br><br>Judge Lawrence M. Baskir |

## JOINT CLAIM CONSTRUCTION STATEMENT AND JOINT STATUS REPORT

Pursuant to paragraphs 5(a) and 6(b) of the Court's "Special Procedures Order for Cases under 28 U.S.C. § 1498(a)" dated July 5, 2006 (the SPO), plaintiff Jennings Transmission Service of Goldsboro, Inc. (Jennings), defendant the United States (the Government), and third-party defendants Jasper Engines & Transmissions (Jasper) and Ready Built

Distributors, Inc. (Ready Built), hereby submit this Joint Claim Construction Statement and Joint Status Report.

In this action, plaintiff asserts infringement of claims 1, 5, 7, 11 and 12 of U. S. Patent No. 6,085,609 ("the '609 patent").

Joint Claim Construction Statement

I. The Construction of Those Claims and Terms on Which the Parties Agree

A. The "means" clauses of claims 1, 5 and 7 are "means plus function" limitations governed by 35 U.S.C. § 112 ¶ 6.

B. The claimed function for the phrase "means proximate the first end of said elongate member connecting the gear selection mechanism of the vehicle to said elongate member for imparting rotational movement to the member in response to the driver's selection of gear" of claim 1 is "imparting rotational movement to the member in response to the driver's selection of gear." The parties disagree as to the structure corresponding to this function.

C. The claimed function for the phrase "means proximate the second end of said elongate member for connecting the elongate member to the shift lever of the replacement transmission and thereby converting rotational movement of the elongate member to movement operating the

shift lever of the replacement transmission" of claim 1 is "connecting the elongate member to the shift lever of the replacement transmission and thereby converting rotational movement of the elongate member to movement operating the shift lever of the replacement transmission." The parties disagree as to the structure corresponding to this function.

D. Claim 5 only requires a "change-over linkage," and does not require a replacement transmission. The parties disagree as to the construction of the "change-over linkage."

II. Each Party's Proposed Construction of Each Disputed Claim and Term, Supported by the Same Information That Is Required under Paragraph 4 of the SPO

**A. "change-over linkage" of asserted claims 1, 5, 7, 11 & 12**

Plaintiff's Position:

1. Proposed Construction: A mechanism or system for transmitting motion from the gear selection mechanism to the shift lever of a transmission for the purpose of changing the connection of the gear selection mechanism to the transmission from one side to the other side.

2. Support in the Claims of the '609 Patent:

a. Claim 11 in its entirety, and particularly Column 7, Lines 24-28; and Column 8, Lines 4 - 5 and 9 - 12.

b. Claim 12 in its entirety.

c. Claim 1, Column 3, Lines 33 - 41.

d. Claim 5, Column 6, Lines 10 - 19.

3. References in the Specification:

a. Title.

b. Abstract.

c. Spec. Column 1, Lines 8 - 15.

d. Spec. Column 1, Lines 57 - 67 and Column 2, Lines 1 - 5.

e. Column 2, Lines 28 - 33.

f. Column 2, Lines 36 - 42.

g. Column 3, Lines 28 - 30.

h. Column 4, Line 24.

i. Column 5, Lines 8 - 14.

j. Drawings from '609 Patent, Figs. 2, 2A-1, 2A, 3, and 4.

4. Extrinsic Evidence:

a. Definition of "linkage" from the <u>American Heritage Dictionary</u>

b. Definition of "linkage" from Yahoo Education

c. Patents and patent publications showing ordinary and common uses of the term "linkage."

Defendants' Position:

1. Proposed construction: The claimed "change-over linkage" is limited to that disclosed in the specification of the '609 patent. Specifically, the claimed "change-over linkage" is the item identified as number 70 in the figures of the patent.

2. Support in the claims: All of the asserted claims 1, 5, 7, 11 and 12 limit the scope of the claimed "change-over linkage" to less than that proposed by plaintiff. Such limitations are addressed below. See also claim 9.

3. References from the specification:

a. The entire patent is limited to a description of a single "change-over linkage" with a very specific configuration and operation.

b. All of the figures and the accompanying "Brief Description of the Drawings," col. 2, lines 14-47. Specifically, Figure 2 is described as "showing the change-over linkage of the invention." Col. 2, line 31.

c. Other sections of the specification include: Col. 2, lines 6-12; col. 3, line 28 through col. 4, line 7; col. 4, lines 19 and 24

(items c and h of the "kit"); col. 3, lines 36-37, 46; col. 5, lines 9-10, 22-26.

4. References from the prosecution history: G000193-97 (Office action) (specifically paragraphs 6 and 7); G000198 (Notice of References Cited); G000199-202 (the Irimajiri reference); G000204-13 (amendment); G000224-27 (declaration); G000234-36 (Notice of Allowability) (specifically paragraph 2).

5. Extrinsic evidence: The definition of "link" and "linkage" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

**B. "gear selection mechanism" of asserted claims 1, 5, 7, 11 & 12**

Plaintiff's Position:

1. Proposed construction: Two or more movable parts in a vehicle that are actuated by the driver, and which are operative to select a gear.

2. Support in the Claims of the '609 Patent:

   a. Claims 1, 5, 7, 11 and 12.

3. References in the Specification:

   a. Figures 1 and 2.

   b. Column 1, Lines 46-67 and Column 2, Lines 1-5.

4. Extrinsic Evidence:

a. Definition of "mechanism" from McGraw Hill Dictionary of Scientific and Technical Terms (5th ed. 1994)

Defendants' Position:

1. Proposed construction:

a. The "gear selection mechanism" is the gear selector lever, the shift rod and any intermediate components such as a shifting tube. These items are identified in the specification as numbers 12, 18 and 16, respectively.

b. The "gear selection mechanism" is a part of the vehicle that is not removed from the vehicle when the original transmission is replaced. The "gear selection mechanism" is not a component of the "change-over linkage."

2. Support in the claims: The "means" phrases in which this term appears in claims 1, 5 and 7; the preambles of claims 5, 7 and 11; claim 11 at col. 8, lines 1-3, 11-14; claim 12.

3. References from the specification:

a. All of the figures and the accompanying "Brief Description of the Drawings," col. 2, lines 14-47. Specifically, Figures 1 through 2A and accompanying text at col. 2, lines 18-32

compare the prior art vehicle configuration with that of the claimed "change-over linkage."

b. Other references include: col.1, lines 59-65; col. 2, line 63 - col. 3, line 6; col. 3, lines 25-29, 49-55; and the abstract.

4. References from the prosecution history: G000193-97 (Office action) (specifically paragraph 6).

5. Extrinsic evidence: Excerpts from the General Motors maintenance manual for the "1987-1992 U.S. Postal Service Long Life Vehicle," copyright 1991.

**C. "shift lever of the replacement transmission" of asserted claims 1, 5, 7, 11 & 12**

Plaintiff's Position:

1. Proposed construction: A moveable lever or arm associated with the replacement transmission for shifting gears within the transmission.

2. Support in the Claims of the '609 Patent:

a. Claims 1, 2, 3, 5, 7, 11 and 12.

3. References in the Specification

a. Abstract.

b. Field of the Invention.

c. Column 2, Lines 18 - 33.

d. Column 2, Lines 63 - 67; Column 3; Column 4, Lines 1-5.

<u>Defendant's Position:</u>

1. Proposed construction: This term refers to the lever or arm attached to the gear selector shaft. The gear selector shaft penetrates the left side of the replacement transmission housing, and the "shift lever" is external to the transmission housing. The "shift lever" is not a component of the "change-over linkage." This item is identified in the specification as number 128.

2. Support in the claims: The "means proximate the second end" clause in which this term appears in claim 1; the preambles of claims 1, 5, 7 and 11; the "multicomponent assembly" limitation of claims 2, 5 and 7; the "installing a right-to-left change-over linkage" step of claim 11; and claim 12.

3. References from the specification: Figures 1 and 1A (item 22), 2A (item 128), 3 and 4; the abstract; col. 1, lines 13-14; col. 1, lines 18-33; col. 3, lines 4-5; col. 3, lines 25-26; and col. 3, line 56 - col. 4, line 5.

4. References from the prosecution history: G000193-97 (Office action) (specifically paragraphs 6 and 7); G000198 (Notice of References Cited); G000199-202 (the Irimajiri reference).

5. Extrinsic evidence: The definition of "lever" and "trunnion" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997); VAN NOSTRAND'S SCIENTIFIC ENCYCLOPEDIA (8th ed. 1995) (discussing "levers" and "machine (simple)"); MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (2nd ed. 1978) ("lever"); U.S. Patent No. 4,267,743 to Tanaka ("shift lever 35"); U.S. Patent No. 5,372,050 to Shinki et al. ("input lever 62"); U.S. Patent No. 4,281,562 to Venuto; Jasper Engine's "Conversion Process for the TH180C/TH700R4 Transmission for Postal Application 2.5 Bracket Conversion" (e.g., item number 16 on the Parts Explosion of Exhibit 4 of Plaintiff's Proposed Claim Construction Statement); and excerpts from the General Motors maintenance manual for the "1987-1992 U.S. Postal Service Long Life Vehicle," copyright 1991; Hurst Performance, *Installation Instructions for Pro-Matic 2 Shifter*, Catalog No. 383 8504, copyright 1991.

**D. "said elongate member having first and second ends that are rotatably supported" of claim 1**

Plaintiff's Position:

1. Proposed construction: This means that end portions of the elongated member are rotatively supported. It does not mean that the extreme ends are held in a support structure.

2. Support in the Claims of the ‘609 Patent:

a. Claims 1, 2, 5, 7 and 12.

3. References in the Specification:

a. Figures 2, 2A-1. 2A, 3 and 4.

b. Column 3, Lines 39-57.

4. Extrinsic Evidence:

a. Definition of “end” - Dictionary.com, http://dictionary.reference.com/browse/end.

Defendant’s Position:

1. Proposed construction: This limitation requires that each support be located at an end (i.e., the terminus or extreme part lengthwise) of the elongate member.

2. Support in the claims: The language of claim 1 that distinguishes the relative position of the components on the elongate member. By comparison, the “means proximate the first end of said elongate member” and “means proximate the second end of said elongate member” must be near the ends, but cannot be at the ends, where the elongate member is “rotatably supported.”

3. References from the specification: Figures 2A-1, 2A3, 4 and 5; col. 3, lines 39-50; col. 3, lines 56-57.

4. References from the prosecution history: G000205 (amendment).

5. Extrinsic evidence: The definition of "end" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

**E. "means proximate the first end of said elongate member connecting the gear selection mechanism of the vehicle to said elongate member for imparting rotational movement to the member in response to the driver's selection of gear" of claim 1**

The parties are in agreement as to the claimed function. See above.

Plaintiff's Position:

1. Proposed construction: The structure disclosed in the specification for performing the claimed function is link 120.

2. References in the Specification:

   a. See Figures 2A-1, 2A, 3, and 4.

   b. Spec. Column 3, Lines 49 - 55.

Defendant's Position:

1. Proposed construction:

   a. The corresponding structure for performing the claimed function is: The first link 120 that is fixedly secured to rod 110 and that includes an opening 124 that connects directly to shift rod 18. Col. 3, lines 49-52; see also Figures 2 through 5.

b. This limitation requires a single link which is directly connected to the "gear selection mechanism" (discussed above) at the shift rod 18 and to the elongate member (rod 110).

2. References from the specification: See the citations above for "change-over linkage."

3. References from the prosecution history: G000193-97 (Office action) (specifically paragraph 6); G000234-36 (Notice of Allowability) (specifically paragraph 2).

**F. "means proximate the second end of said elongate member for connecting the elongate member to the shift lever of the replacement transmission and thereby converting rotational movement of the elongate member to movement operating the shift lever of the replacement transmission" of claim 1**

The parties are in agreement as to the claimed function. See above.

Plaintiff's Position:

1. Proposed construction: The structure disclosed in the specification for performing the claimed function is link 130.

2. References in the Specification:

a. See Figures 2A-1, 2A, 3, and 4.

b. Spec. Column 3, Lines 50 - 62.

Defendant's Position:

1. Proposed construction:

a. The corresponding structure for performing the claimed function is that shown in Figures 2A, 2A-1, 3, 4 and 5 of the '609 patent and described as follows at column 3, line 56 through column 4, line 5:

(1) "This assembly comprises a first component 130 that is fixedly secured to rod 110 by welding or the like, and respective pivotally connected links 134 and 138. Opening 140 in link 138 connects directly to shift lever 128. This three-part assembly may be adjusted in configuration by loosening and thereafter tightening the illustrated bolts 145, 147 so that it precisely affixes to shift lever 128 for a proper changing of gears in response to the driver's movement of the gear selector lever 12. More particularly, the spatial adjustment of the assembly is achieved by locating bolt 145 at the desired location in slot 149 in intermediate link 134 and by pivoting links 134, 138 as necessary about the pivot points defined at bolts 145, 147."

(2) Therefore, the corresponding structure includes links 130, 134 and 138, and bolts 145 and 147. Link 138 has an opening 140 which connects directly to the shift lever 128. Link 134 contains slot 149.

2. References from the specification: See also the citations above for "change-over linkage."

3. References from the prosecution history: G000193-97 (Office action) (specifically paragraph 6); G000234-36 (Notice of Allowability) (specifically paragraph 2).

**G. "connecting" of claims 1, 5, 7, 11 and 12**

Plaintiff's Position:

1. Proposed construction: "Connecting" in the context of the claims, means that certain elements of the claim are linked. "Connecting", as used in the '609 patent, means that the elements are joined or linked directly or indirectly.

2. Support in the Claims of the '609 Patent:

a. Claims 1, 2, 5, 7, 11 and 12

3. References in the Specification:

a. Spec. Column 1, Lines 8 – 15.

b. Spec. Column 3, Lines 56-60.

c. Drawings from ‘609 Patent, Figs. 2, 2A-1, 2A, 3, and 4.

4. Extrinsic Evidence:

a. Definition of “connecting” from the American Heritage Dictionary

Defendant’s Position:

1. Proposed construction: The claimed “change-over linkage” is joined or linked directly to the “gear selection mechanism” and the “shift lever of the replacement transmission.” The only dispute between the parties appears to be whether the joinder or linkage must be direct or may be indirect.

2. Support in the claims: All of the asserted claims 1, 5, 7, 11 and 12 limit the scope of the claimed “connecting” to less than that proposed by plaintiff. Such limitations are addressed above and below. See also claims 2, 3 and 6.

3. References from the specification: Figures 2, 2A-1, 2A, 3 and 4; the abstract; col. 1, line 13; col. 3, lines 25-30; col. 3, lines 49-55; col. 3, line 56 - col. 4, line 5; col. 4, lines 56-57; and col. 5, lines 9-14.

4. References from the prosecution history: G000193-97 (Office action) (specifically paragraph 6); G000234-36 (Notice of Allowability) (specifically paragraph 2).

5. Extrinsic evidence: The definition of “connect” and “connected” from MERRIAM-WEBSTER’S COLLEGIATE DICTIONARY (10th ed. 1997).

**H. “an elongate member supported for rotational movement at its right and left ends” of claims 5 and 7**

Plaintiff’s Position:

1. Proposed construction: Right and left ends refers to the right and left end portions of the elongated member. This phrase cannot be construed to mean that the supports for the elongated member are located on the extreme ends of the elongated member.

2. Support in the Claims of the ‘609 Patent:

a. Claims 1, 2, 5, 7 and 12.

3. References in the Specification:

a. Figures 2, 2A-1. 2A, 3 and 4.

b. Column 3, Lines 39-57.

4. Extrinsic Evidence:

a. Definition of “end” - Dictionary.com, http://dictionary.reference.com/browse/end.

Defendant’s Position:

1. Proposed construction: This limitation requires that each support is located at the end (i.e., the terminus or extreme part lengthwise)

of the elongate member. The "means proximate the right end of said elongate member" and "a multicomponent assembly proximate the left end of said elongate member" must be near the ends, but cannot be located between the support and the respective end of the member.

2. Support in the claims: The language of claims 5 and 7 that distinguishes the relative position of the components on the elongate member. By comparison, the "means proximate the right end of said elongate member" and "a multicomponent assembly proximate the left end of said elongate member" must be near the ends, but cannot be at the ends, where the elongate member is "supported for rotational movement."

3. References from the specification: Figures 2A-1, 2A3, 4 and 5; col. 3, lines 39-50; col. 3, lines 56-57.

4. References from the prosecution history: G000206-08 (amendment).

5. Extrinsic evidence: The definition of "end" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

**I. "means proximate the right end of said elongate member for connecting the gear selection mechanism of the vehicle to the elongate member for imparting rotational movement to the elongate member in response to the driver's selection of gear" of claims 5 and 7**

Plaintiff's Position:

1. Proposed construction: The function of the means is for imparting rotational movement to the member in response to the driver's selection of a gear. The structure disclosed in the specification forming this function is link 120.

2. References in the Specification:

   a. Figures 2A-1, 2A, 3, and 4.

   b. Spec. Column 3, Lines 49 - 55.

Defendants' Position:

1. Proposed construction:

   a. The claimed function is: "connecting the gear selection mechanism of the vehicle to the elongate member for imparting rotational movement to the elongate member in response to the driver's selection of gear."

   b. The corresponding structure is: The first link 120 that is fixedly secured to rod 110 and that includes an opening 124

that connects directly to shift rod 18. Col. 3, lines 49-52; see also Figures 2 through 5.

c. Therefore, this limitation requires a single link which is directly connected to the "gear selection mechanism" (discussed above) at the shift rod 18 and to the elongate member (rod 110).

2. References from the specification: See also the citations above for "change-over linkage."

3. References from the prosecution history: G000193-97 (Office action) (specifically paragraph 6); G000234-36 (Notice of Allowability) (specifically paragraph 2).

**J. "at least one additional link pivotally connected to the first component" of claims 5 and 7**

Plaintiff's Position:

1. Proposed construction: This claim term means that the additional link can rotate with respect to the first component.

2. Support in the claims:

a. Claims 5 and 7.

3. References from the specification:

a. Figures 2, 2A-1, 2A, 3, and 4.

b. Column 3, Lines 56 – 67.

c. Column 4, Lines 1 – 5.

4. Extrinsic evidence:

a. Definition of "pivot" and "pivotal" from Yahoo! Education.

<u>Government's Position</u>:

1. Proposed construction: The "at least one additional link" must be connected to and pivot relative to the "first component." This claim language does not address the movement of the "additional link" relative to the "elongate member."

2. Support in the claims: Claims 5 and 7.

3. References from the specification: Figures 2, 2A-1, 2A, 3 and 4; col. 3, line 56 - col. 4, line 5.

4. Extrinsic evidence: The definition of "pivot" and "pivotal" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

<u>Jasper Engine's Position</u>:

1. Proposed Construction: This limitation requires that the "at least one additional link pivotally connected to the first component" be capable of pivoting about the elongate member together with the "first component projecting from said elongate member."

2. Support in the Claims of the '609 Patent:

a. Claims 5 and 7

3. References in the Specification:

a. Figures 4 and 5.

b. Column 3, Lines 61-67.

c. Column 4, Lines 1-5.

4. Extrinsic evidence:

a. The definition of “pivot” from Merriam-Webster’s Online Dictionary (http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=pivot)

**K. “kit” of claim 7**

Plaintiff’s Position:

1. Proposed construction: The term “kit” as used in claim 7 means a set of parts to be assembled. Individual parts of the kit may comprise an assembly.

2. Support in the Claims of the ‘609 Patent:

a. Claims 7, 8, 9 and 10.

3. References in the Specification:

a. Figures 2, 2A-1, 2A, 3, 4 and 5.

b. Column 2, Lines 6-12.

c. Column 2, Lines 46-48.

d. Column 4, Lines 6-13.

4. Extrinsic Evidence:

a. Definition from Yahoo! Education.

Defendant's Position:

1. Proposed construction: A packaged set of parts. The ordinary meaning of the term "kit" does not encompass a completed assembly of the parts included in the "kit." The claim requires that the listed components of the kit be supplied together and not purchased separately.

2. Support in the claims: Claim 7 in its entirety, which lists the parts included in the claimed kit. Dependant claims 8 through 10, which further limit the claimed "kit." Claims 1 through 6, which claim assembled components.

3. References from the specification: Col. 2, lines 1-11; col. 4, lines 6-27; Figure 5; the abstract.

4. References from the prosecution history: G000228-29 (Information Disclosure Statement) ("kit ([application] claim 5)" as distinguished from the other independent claims).

5. Extrinsic evidence: The definition of "kit" from MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

**L. "said method comprising the steps of . . ." of claim 11 and "The method of claim 11" of claim 12**

Plaintiff's Position:

1. Proposed construction: The United States and Jasper argue that claims 11 and 12 are restricted to the recited steps being performed in the specific sequence set forth in claims 11 and 12. Claims 11 and 12 have no sequential limitations. The method of claims 11 and 12 can be performed in any sequence so long as all of the steps are performed literally or by equivalency.

2. Support in the Claims of the '609 Patent:

   a. Claims 11 and 12 in their entirety.

Defendant's Position:

1. Proposed construction: Claims 11 and 12 require that the steps of "raising a replacement transmission with left side shift lever, and associated torque convertor, into position" and "installing a right-to-left change-over linkage operatively connecting the right side gear selection mechanism of the vehicle to the left side shift lever on the replacement transmission" be performed in the specific sequence listed in claim 11. In particular, the replacement transmission must be raised into position in the vehicle prior to the installation of the "right-to-left change-over linkage."

2. Support in the claims: Claims 11 and 12, and specifically the following language of claim 11: “installing a right-to-left change-over linkage operatively connecting the right side gear selection mechanism of the vehicle to the left side shift lever on the replacement transmission.” This language indicates that the installation of the “linkage operatively connecting” the vehicle to the transmission would not be possible until after the transmission has been raised into position in the vehicle.

3. References from the specification: Col. 4, line 28 - col. 5, line 27, specifically col. 4, line 28 (“The following step-by-step procedure . . .”) and col. 4, lines 51-54 (the first step of installing the replacement transmission is raising it into position in the vehicle); the abstract (“Also disclosed is a step-by-step operational procedure for carrying out the transmission replacement.”); Figures 2, 2A-1 and 2A.

**M. “right-to-left change-over linkage” of claim 11**

<u>Plaintiff’s Position:</u>

1. Proposed construction: A mechanism or system for transmitting motion from the gear selection mechanism to the shift lever of a transmission for the purpose of changing the connection of the gear selection mechanism to the transmission from the right side to the left side.

2. Support in the Claims of the ‘609 Patent:

a. Claim 11 in its entirety, and particularly Column 7, Lines 24 - 28; and Column 8, Lines 4 - 5 and 9 - 12.

b. Claim 12 in its entirety.

c. Claim 1, Column 3, Lines 33 - 41.

d. Claim 5, Column 6, Lines 10 - 19.

3. References in the Specification:

a. Title.

b. Abstract.

c. Spec. Column 1, Lines 8 - 15.

d. Spec. Column 1, Lines 57 - 67 and Column 2, Lines 1 - 5.

e. Column 2, Lines 28 – 33.

f. Column 2, Lines 36 – 42.

g. Column 3, Lines 28 – 30.

h. Column 4, Line 24.

i. Column 5, Lines 8 – 14.

j. Drawings from ‘609 Patent, Figs. 2, 2A-1, 2A, 3, and 4.

4. Extrinsic Evidence:

a. Definition of “linkage” from the American Heritage Dictionary.

b. Definition of “linkage” from Yahoo Education.

c. Patents and patent publications showing ordinary and common uses of the term “linkage.”

Defendant’s Position:

1. Proposed construction: The claimed “change-over linkage” is limited to that disclosed in the specification of the ‘609 patent. Specifically, the claimed “change-over linkage” is the item identified as number 70 in the figures of the patent. This term does not cover a cable-type configuration as there is no disclosure of such a configuration in the ‘609 patent and the specification describes the solely disclosed elongate rod-type embodiment shown in figure 2 as “the change-over linkage of the invention.” Col. 2, line 31.

2. Support for the construction: See the support cited above for this term as applicable to all asserted claims, and specifically col. 2, lines 10-11; col. 2, line 27-32 (describing Figure 2 as “showing the change-over linkage of the invention”); col. 5, line 9-14 (“Install change-over linkage 70 as described above . . .”).

**N. “the change-over linkage” of claim 12**

Plaintiff’s Position:

1. Proposed construction: A mechanism or system for transmitting motion from the gear selection mechanism to the shift lever of

a transmission for the purpose of changing the connection of the gear selection mechanism to the transmission from the right side to the left side.

2. Support in the Claims of the '609 Patent:

   a. Claim 11 in its entirety, and particularly Column 7, Lines 24 - 28; and Column 8, Lines 4 - 5 and 9 - 12.

   b. Claim 12 in its entirety.

   c. Claim 1, Column 3, Lines 33 - 41.

   d. Claim 5, Column 6, Lines 10 - 19.

3. References in the Specification:

   a. Title.

   b. Abstract.

   c. Spec. Column 1, Lines 8 - 15.

   d. Spec. Column 1, Lines 57 - 67 and Column 2, Lines 1 - 5.

   e. Column 2, Lines 28 – 33.

   f. Column 2, Lines 36 – 42.

   g. Column 3, Lines 28 – 30.

   h. Column 4, Line 24.

   i. Column 5, Lines 8 – 14.

   j. Drawings from '609 Patent, Figs. 2, 2A-1, 2A, 3, and 4.

4. Extrinsic Evidence:

a. Definition of "linkage" from the American Heritage Dictionary

b. Definition of "linkage" from Yahoo Education

c. Patents and patent publications showing ordinary and common uses of the term "linkage."

Defendant's Position:

1. Proposed construction: This claim incorporates all of the limitations of claim 11, and, therefore, this claim is also limited to "the change-over linkage" that disclosed in the specification of the '609 patent. Specifically, the claimed "change-over linkage" is the item identified as number 70 in the figures of the patent.

2. Support for the construction: See the support cited above for this term as applicable to all asserted claims and the support cited above for claim 11.

## III. For Any Party Who Proposes to Call One or More Witnesses at the Claim Construction Hearing, the Identity of Each Such Witness, the Subject Matter of Each Witness' Testimony, and an Estimate of the Time Required for the Testimony

The parties do not propose to call witnesses at the claim construction hearing.

IV. The Jointly Agreeable Dates for a Briefing Schedule in Advance of the Claim Construction Hearing

1. On or before March 6, 2007, Jennings shall serve and file its opening brief and supporting evidence.

2. On or before March 23, 2007, the United States, Jasper Engines and Ready-Built shall serve and file their responsive briefs and evidence.

3. On or before April 6, 2007, Jennings shall serve and file its reply brief and any evidence directly rebutting the supporting evidence contained in the opposing parties' responses.

Joint Status Report

Pursuant to paragraph 5(a) of the Court's "Special Procedures Order for Cases under 28 U.S.C. § 1498(a)" dated July 5, 2006, the parties propose that, because the relevant technology is not unduly complicated, the tutorial be consolidated with the claim construction hearing. The parties contemplate presenting a short tutorial by counsel prior to proceeding with claim construction arguments.

The parties propose that the consolidated tutorial and claim construction hearing occur during the week of May 7, 2007.

Respectfully submitted,

January 19, 2007

Larry L. Coats
N.C. State Bar No. 5,547
Anthony J. Biller
N.C. State Bar No. 24,117
Coats & Bennett, P.L.L.C.
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone No.: (919) 854-1844
Facsimile No.: (919) 854-2084

Attorneys for Plaintiff Jennings Transmission Service

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

January 19, 2007

KEN B. BARRETT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0343
Facsimile: (202) 307-0345
E-mail: ken.barrett@usdoj.gov

Attorneys for the United States

OF COUNSEL:
GARY L. HAUSKEN
Assistant Director
Department of Justice

January 19, 2007

James M. Hinshaw
Rafael A. Sanchez
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN 46204-4900
Telephone: (317) 635-8900
Facsimile: (317) 236-9907
Attorneys for Jasper Engines & Transmissions

January _____, 2007

James S. Ward
Ward & Wilson, LLC
2100 Southbridge Parkway
Suite 580
Birmingham, Alabama 35209
Telephone: (205) 871-5404
Facsimile: (205) 871-5758
Attorney for Ready-Built Distributors, Inc.

January _____, 2007

_______________________
James M. Hinshaw
Rafael A. Sanchez
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN 46204-4900
Telephone: (317) 635-8900
Facsimile: (317) 236-9907
Attorneys for Jasper Engines & Transmissions

January 19, 2007

_______________________
James S. Ward
Ward & Wilson, LLC
2100 Southbridge Parkway
Suite 580
Birmingham, Alabama 35209
Telephone: (205) 871-5404
Facsimile: (205) 871-5758
Attorney for Ready-Built Distributors, Inc.