# EXHIBIT E

OIPE JC67 FEB 14 2000 PATENT & TRADEMARK OFFICE

#12

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Jerry R. Mozingo et al. )
Serial No. 09/032,960 )
Filed: March 2, 1998 )
For: REPLACING TRANSMISSION )
OF RIGHT DRIVE VEHICLE WITH )
TRANSMISSIONS DESIGNED FOR )
LEFT DRIVE VEHICLE, AND )
ASSOCIATED CHANGE-OVER )
LINKAGE )

Group Art Unit: 3682
Examiner: Allan D. Herrmann

RECEIVED
FEB 16 2000
TC 3600 MAIL ROOM

Assistant Commissioner for Patents
Washington, D.C. 20231

INFORMATION DISCLOSURE STATEMENT UNDER 37 CFR §§ 1.97(c)

Pursuant to 37 CFR §§1.56 and 1.97(c), applicants bring to the attention of the Examiner certain factual information discussed in the enclosed Declaration of Christopher S. Smith. This declaration contains information that may be material to the examination of this application and that should be considered by the Examiner. For the reasons pointed out in detail below, the claims of the application comply with the requirements of 35 USC §102(b) and should be found patentable in light of the facts disclosed in the declaration.

Under the provisions of 37 CFR §1.97(c), this information Disclosure Statement is accompanied by a fee of $240.00 as specified by §1.17(p).

This application was filed on March 2, 1998. The events described in the declaration submitted herewith concern activities that occurred more than one year prior to the filing date of this application, i.e., before March 2, 1997.

Prior to March 2, 1997, Jennings Transmission Service of Goldsboro, Inc., the assignee of this application, installed nine rebuilt General Motors 700R4 transmissions with change-over linkage into Grumman LLV-A postal vehicles to replace the original equipment transmissions that had failed in these vehicles. The transmission/linkage combination (claim 1), the linkage *per se*

(claim 5), the transmission replacement method (claim 7) and the kit (claim 9) associated with these nine vehicle installations were substantially as described in the specification and drawings of the present application and fall within the claims of the application. These nine vehicles made up an experimental test fleet that was used by the United States Postal Service in several cities in the eastern North Carolina region for the purpose of determining whether the invention, as so installed, would hold up to the stressful, stop-and-go usage that postal vehicles are subjected to. The experimental test program extended over a period of time that was necessary to establish the invention's reliability and durability in its intended environment. Smith Decl. ¶¶9-11.

35 USC §102(b) provides, in part, that a person is not entitled to a patent if

> "the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

However, if the primary purpose of the use or sale is experimental, and any commercial exploitation is incidental, there is no bar under 35 USC 102(b). City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126 (1878).

A number of factors must be weighed in determining whether the experimental test fleet activity prior to the critical date of March 2, 1997 was experimental.

Was the Primary Purpose of the Experimental Test Fleet Activity, in Fact, Experimental?

Yes. The experimental test fleet was put into service for the primary purpose of determining whether the invention would work with sufficient durability in its intended environment (i.e., would the invention hold up for an acceptable time/mileage duration under the actual harsh driving conditions that the invention was expected to be subjected to?). Everyone involved understood that the purpose was experimental. Smith Decl. ¶10.

Was the Commercial Exploitation Relating to the Experimental Test Program Incidental?

Yes. For each of the nine vehicles in the experimental test program, the U.S. Postal Service was charged only the then-current price for replacing the failed LLV-A transmission with a rebuilt transmission of the original equipment design -- the ones that were causing the problem in the first place. The charge to the Postal Service was less than the actual cost incurred by Jennings Transmission. Jennings Transmission did not make a profit. Smith

cl. ¶12. Also, the number of vehicles in the experimental test eet was so small as to, in and of itself, assure that any money at changed hands would be "incidental" in the context of the erall importance of the test program and the number of postal hicles having the transmission problem in the United States alone.

Further underscoring the lack of commercial exploitation during e experimental test program is the fact that Jennings Transmission de no efforts at market penetration prior to the critical date of rch 2, 1997. There were no price lists developed, there were no mples distributed, there were no demonstrations. Smith Decl. ¶14.

s it Necessary That the Experimental Activity Be in Public?

Yes. The nine experimental test vehicles had to be driven on blic roads that make up postal routes.

It is clear that an experimental use can be in public. As ated in Pfaff v. Wells Electronics Inc. 48 USPQ2d at 1645:

> "[A]n inventor ... may conduct extensive testing without losing his right to obtain a patent for his invention – even if such testing occurs in the public eye."

d the Experimental Testing Program Have to Last for a Substantial riod of Time?

Yes. As mentioned above, the purpose of the experimental test ogram was to determine whether the invention would work tisfactorily and hold up for the necessary time/mileage in its tended environment. This requirement meant that the test program tended beyond the critical date (March 2, 1997). Objective idence of the necessity of this duration of the test program is at the U.S. Postal Service, faced with a long-term reliability oblem with respect to its LLV-A transmissions, waited until a date ter March 2, 1997 to declare the program a success and to place s first order with Jennings Transmission. Smith Decl. ¶¶15 and .

s the Number of Vehicles in the Experimental Test Program asonable Under the Circumstances?

Yes. Surely only one or a very few vehicles would not nstitute an acceptable statistical sample. Nine vehicles is a asonable number.

w Was the Experimental Test Program Controlled?

The invention was installed in the nine vehicles of the perimental test fleet by the inventors at the premises of Jennings

Transmission according to their exacting standards. The nine vehicles were then put on the road in several cities in eastern North Carolina by the Postal Service representative who was involved in initiating the program. It was agreed that the Postal Service would not disclose the invention to third parties and that third parties would not be made aware of the experimental test program. The postal vehicle drivers using the experimental test vehicles did not know that their vehicles incorporated the invention. It was agreed that any failures would be reported to Jennings Transmission. There were no failures. Smith Decl. ¶¶11, 13 and 14.

The above analysis, which includes a consideration of the factors enumerated by the Federal Circuit in determining whether a public sale/use is experimental, establishes that the activities described above do not constitute a statutory bar under 35 USC §102(b) against the instant claims.

For the reasons pointed out above, applicants submit that the claims of this application satisfy the requirements of 35 USC §102(b).

A prompt and favorable action is earnestly solicited. If the Examiner should have any questions, he is encouraged to telephone the undersigned.

Respectfully submitted,

R. S. Faust FEB. 11, 2000

Richard S. Faust
Registration No. 27,544
Attorney for Applicants

Richard S. Faust
8384 Six Forks Rd.
Suite 204
Raleigh, NC 27615
Telephone: (919)846-4900
Fax: (919)846-9543

Attorney Docket No. JEN-1