**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**No.: 1:05-cv-1209C**
**JUDGE LAWRENCE M. BASKIR**

| | |
|---|---|
| **JENNINGS TRANSMISSION SERVICE OF GOLDSBORO, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant,**<br><br>**and**<br><br>**JASPER ENGINES & TRANSMISSIONS**<br><br>**Third-Party Defendant,**<br><br>**and**<br><br>**READY BUILT DISTRIBUTORS, INC.,**<br><br>**Third-Party Defendant.** | **JENNINGS' REPLY BRIEF ON CLAIM CONSTRUCTION** |

## Table of Contents

I. The Government's Claim Construction Analysis Ignores of Violates Fundamental Canons of Claim Construction and Confuses the Role of the Specification and Claims ........ 1

II. The Government's Claim Construction for Change-over Linkage, Gear Selection Mechanism, and Shift Lever All Violate the Claim Construction Cannon Prohibiting Importing Limitations From the Specification Into the Claims ........ 3

III. Jennings' Response to Specific Arguments of the Government ........ 5

A. The Government's proffered construction of change-over linkage is inconsistent with other terms in the claims and fails to consider the context in which "change-over linkage" is used in the claim ........ 5

B. The rotatively supported limitations of claims 1, 5, and 7 ........ 8

C. The Government's contention that "connecting" means a direct physical connection is not consistent with the specification ........ 10

D. The Government's construction of "means proximate the first end" and "means proximate the right end" includes more than corresponding structure ........ 11

E. The Government's construction of "means proximate the second end" includes corresponding structure beyond what is necessary to perform the claimed function ........ 12

F. Jasper's construction of the "additional link" limitation of claims 5 and 7 imports limitations from the specifications into the claims ........ 13

G. Contrary to the Government's position, the "kit" term in the preamble of claim 7 is non-limiting and the Government's proffered construction does not even read on the preferred embodiment ........ 14

H. Method claims 11 and 12 are not limited to any particular sequence ........................................................................ 16

## Table of Authorities

### Statutes

35 U.S.C. § 112 (1975) .......... 2, 11

### Cases

*Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371 (Fed. Cir. 2001) .......... 6

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003) .......... 4

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003) .......... 17

*Chuminatta Concrete Concepts, Inc. v. Cardinal Ind., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998) .......... 12

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) .......... 2, 5

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999) .......... 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) .......... 3

*Norian Corp. v. Stryker Corp.*, 363 F.3d 1321 (Fed. Cir. 2004) .......... 15

*Oak Tech. Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316 (Fed. Cir. 2001) .......... 1

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......... 2

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983) .......... 2

*Schenck, AG v. Nortron Corp.*, 713 F.2d 782 (Fed. Cir. 1983) .......... 6

*Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142 (Fed. Cir. 2004) .......... 10

*SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985) .......... 4

*Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002).....4

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........16

*Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440 (Fed. Cir. 1997).....7

**Pleadings**

D. 41, The United States' Claim Construction Brief ..... 1, 5, 8, 9, 11, 14, and 15

D. 28, Special Procedures Order for Cases Under 28 U.S.C. § 1498(a).....6

## I. The Government's Claim Construction Analysis Ignores or Violates Fundamental Canons of Claim Construction and Confuses the Role of the Specification and Claims

The Government's argument begins with acknowledging three of the most basic canons of claim construction. First, it is a bedrock principle that the claims define the invention. Second, claim construction begins with the claims themselves. Third, words of a claim are given their ordinary and customary meaning. D. 41 at p. 3. However, after acknowledging these canons of claim construction the Government's Brief proceeds without applying or even mentioning them.

The Federal Circuit has explained that specifications teach and claims claim. *Oak Tech. Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1329 (Fed. Cir. 2001). That fundamental principle of patent law is lost in the Government's claim construction analysis. Indeed, the reoccurring theme throughout the Government's Brief is that the claims of U.S. Patent No. 6,085,609 (the '609 patent) must be construed as being limited to the exemplary embodiments disclosed in the '609 specification.

The Government confuses the respective roles of the specification and claims. As the Federal Circuit has repeatedly held, claims are interpreted in light of the specification, but that does <u>not</u> mean everything expressed in the specification must be read into the claims. On the

contrary, in order to meet the requirements of 35 U.S.C. §112 the specification must be sufficiently detailed to enable one skilled in the art to practice the invention. A claim, on the other hand, defines only that which the patentee regards as his invention. The claims - not the specification - measure the invention. The argument that a claim must include a limitation found in the specification is legally wrong. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983).

In confusing the role of the specification and claims, the Government violates another fundamental canon of claim construction. Limitation from the specification cannot be read into the claims. *See e.g., Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). Repeatedly, whether analyzing "change-over linkage," "gear shifting mechanism," "shift lever," or "kit," the Government's proffered construction imports limitations from the specification and rewrites the claims so narrowly they cannot be infringed.

Moreover, by consistently importing limitations from the specification into the claims, and arguing that the claims are limited to specific embodiments disclosed in the specification, the Government fails to examine the ordinary and customary meaning of the claim terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (holding that words of

a claim are generally given their ordinary and customary meaning). Repeatedly, the analytical focus is on how the claim can be limited by importing limitations from the specification - not on the claims themselves, nor the ordinary and customary meaning of the terms in the claims.

## II. The Government's Claim Construction for Change-Over Linkage, Gear Selection Mechanism, and Shift Lever All Violate the Claim Construction Cannon Prohibiting Importing Limitations From the Specification Into the Claims

Many of the Government's proffered constructions import limitations from the specification into the claims. The Government even urges that "change-over linkage" be construed to include every structural limitation in Figure 3 of the '609 patent. For "gear selection mechanism," the Government urges importing from the specification the additional limitations of gear selector lever, shift rod, and any intermediate components such as a shifting tube. In the case of "shift lever" the Government imports from the specification the further limitation of gear selector that is not even discussed in the text of the '609 patent. In the case of claims 11 and 12, the Government imports sequence limitations into the claims.

The Federal Circuit has repeatedly rejected any contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. *See, e.g. Liebel-*

*Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003); *SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 N.14 (Fed. Cir. 1985)(*en banc*). Even when the specification describes only a single embodiment, the claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

There is nothing in the '609 patent that indicates that the inventors intended to limit their claims to an exemplary embodiment. Indeed, just the opposite is revealed in the '609 patent.

> While the present invention will be described more fully hereinafter with reference to the accompanying drawings, in which aspects of the preferred manner of practicing the present invention are shown, it is to be understood at the outset of the description which follows that persons of skill in the appropriate arts may modify the invention herein described while still achieving the favorable results of this invention. Accordingly, the description which follows is to be understood as being a broad, teaching disclosure directed to persons of skill in the appropriate arts, and not as limiting upon the present invention. (emphasis added)

App., pp. 24-25, '609 patent, col. 2, ll. 51-62.

> While the invention has been described in connection with certain illustrated embodiments it will

> be appreciated that modifications may be made without departing from the true spirit and scope of the invention. (emphasis added)

App., pp. 31-32, '609 patent, col. 5, ll. 27-32.

No doubt the Government will argue that it is only construing the term in light of the specification. The Government misinterprets this principle. Although the specification may aid the Court in interpreting the meaning of a claim term, particular embodiments and limitations appearing in the specification will not be read into the claims. *Constant,* 848 F.3d at 571.

In all cases the claims themselves are devoid of the limitations that the Government seeks to import. Furthermore, these imported limitations are not based on any ordinary meaning. They are imported from the specification.

## III. Jennings' Response to Specific Arguments of the Government

### A. The Government's proffered construction of change-over linkage is inconsistent with other terms in the claims and fails to consider the context in which "change-over linkage" is used in the claims

The Government's claim construction of "change-over linkage" is rather unusual. Instead of proffering a concrete construction, the Government simply proclaims that "change-over linkage" is limited to that structure disclosed in the '609 specification. D. 41 at p. 7. An examination

of this proposition reveals why the Government is reluctant to set forth the limitations that make up the specific embodiment identified generally by the numeral 70. This embodiment, as seen in Figure 3 of the '609 patent, includes many structural components including the elongated member 110, link 120, the multi-component assembly made up of links 130, 134, and 138 and all the other "nuts and bolts" of the exemplary embodiment.

This Court, in its Special Procedures Order, (D. 28), reminded the parties that a construction of a claim term in isolation without regard to context is discouraged. A closely related principle of claim construction is that consistency in claim construction is important. *Schenck, AG v. Nortron Corp.*, 713 F.2d 782, 787 (Fed. Cir. 1983). In the absence of any evidence to the contrary, a court must presume the use of different terms in the claims connotes different meanings. *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1381-82 (Fed. Cir. 2001). Hence, a construction that imports a limitation already in the claim is certainly wrong.

The Government's construction on its face is inconsistent with other terms in the claims. Specifically, limitations that the Government attempts to import into the claims for "change-over linkage" are already in the claims, and hence render the terms redundant. After reciting the "change-over linkage" claim 1 calls for an elongated member. But the Government's

claim construction for "change-over linkage" seeks to import the same limitation into the same claim. Claim 1 further includes the term "means proximate the first end……" The Government and Jennings agree that this means term is construed to include link 120. But yet the Government's construction of "change-over linkage" also includes link 120. A third element in claim 1 calls for "means proximate the second end………" Here, the Government maintains that this means term of claim 1 must be construed to include the multi-component assembly made up of links 130, 134 and 138. Again, the Government's construction of "change-over linkage" seeks to import the same limitations into claim 1 under the guise of being a proper construction of "change-over linkage." Hence, under the Government's construction, the entirety of claim 1, after the preamble, is rendered meaningless. That is a clear sign that the construction is wrong.

An independent claim must not be interpreted in a way that is inconsistent with a claim that depends from it. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997). The Government's construction also violates this rule. Claim 1 is an independent claim. Claims 2 and 3 are dependent claims, depending from claim 1. Dependent claims are presumed to be more limited than the independent claims from which they depend. Expressed in another way, terms in an independent

claim cannot be construed to mean the same as terms introduced in dependent claims. Dependent claims 2 and 3 are limited to a multi-component assembly with claim 2 reciting that the assembly includes a first component and an additional link, while claim 3 recites that the assembly includes three components. The structure shown in Figure 3 of the '609 patent corresponding to these three components are links 130, 134 and 138. These three components are among the same components that the Government attempts to import into claim 1 for the "change-over linkage." The doctrine of claim differentiation, which is a common sense notion, holds that different words or phrases used in separate claims are presumed to have different meanings and scope, and normally means that limitations in dependent claims are not to be read into independent claims from which they depend. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). The Government's construction reads the limitations of claims 2 and 3 into claim 1, and effectively renders claims 2 and 3 superfluous and meaningless.

**B. The rotatively supported limitations of claims 1, 5 and 7**

The argument advanced by the Government is difficult to follow. D. 41 at pp. 20-23. Initially it appeared that this claim construction issue dealt with the location of the supports for rotatively supporting the elongated

member. Now it appears that the issue has evolved to focus on the location of the supports relative to other components of the change-over linkage. *Id.* at p. 22. In the end it appears the Government argues for a claim construction that limits the first and second linkage means to being particularly spaced inwardly of the supports.

Neither claims 1, 5 or 7 includes such a limitation. Nothing in these claims speaks to the spatial relationship of the supports with respect to various other components of the change-over linkage. A spatial relationship cannot be implied simply because the claims refer to first and second ends of the elongated member being rotatively supported, and the first and second means being proximate the first and second ends of the elongated member. The impetus for the Government's claim construction is again the specification. The exemplary embodiment of Figure 3 shows the spatial relationship that the Government attempts to import into the claims. The claims do not state that the supports are disposed outwardly of the first and second means. This is another example where the Government has ignored basic cannons of claim construction and imported limitations from the specification into the claims.

### C. The Government's contention that "connecting" means a direct physical connection is not consistent with the specification

The Government argues that Jennings' construction for connecting is divorced from the specification. It is not. In the context of the specification, and considering the ordinary meaning of "connecting," Jennings' proposed construction is appropriate. Indeed, the '609 specification uses "connecting," "connect," and "connected" throughout. When elements are physically connected the specification uses the term "connected directly." Otherwise, "connect" and "connecting" are used in the broader sense to mean the components are linked, which does not require a physically direct connection.

Even *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1150 (Fed. Cir. 2004), cited by the Government, recognizes that the ordinary meaning of "connecting" can encompass an indirect connection. But unlike *Searfoss*, the '609 patent uses both terms, "connected directly" and "connecting," to describe two types of connections. The '609 specification clearly makes a distinction between the two. Indeed, in describing a direct physical connection the specification uses the term "connected directly." For example, in describing how link 138 connects to the shift lever, the

inventors state that "link 138 connects directly to shift lever 128." App. p. 10, '609 patent, col. 3, ll. 56-63.

**D. The Government's construction of "means proximate the first end" and "means proximate the right end" includes more than corresponding structure**

First, 35 U.S.C. §112 ¶6 requires that only the corresponding structure be identified. Jennings and the Government agree link 120 is a corresponding structure for the means terms. However, the Government goes further. Its construction adds numerous environment limitations such as "fixedly secured to rod 110" and "connects directly to shift rod 18." D. 41 at p. 24 and 28. Section 112 requires that only corresponding structure be identified. Attaching points and other connected structure are not corresponding structure.

Opening 124 in link 120 is not a corresponding structure because the opening does not impart rotational movement to the member. It is link 120 that actually turns or rotates the member. Effectively, the Government argues that the change-over linkage would not work without opening 124. D. 41 at pp. 26-27. That is not the test for construing a means-plus-function claim. Opening 124 simply does not impart rotational movement to the member, and accordingly is not corresponding structure.

An example of applying Section 112 ¶6 is found in *Chuminatta Concrete Concepts, Inc. v. Cardinal Ind., Inc.*, 145 F.3d 1303 (Fed. Cir. 1998). The court determined a skid plate constituted the corresponding structure. However, the patent specification showed many details of the preferred skid plate. The Federal Circuit refused to include these additional structural features or aspects because they "are not what the statute contemplates as a structure corresponding to the recited function." *Id.* at 1308.

### E. The Government's construction of "means proximate the second end" includes corresponding structure beyond what is necessary to perform the claimed function

The Government's proposed corresponding structure for this means includes the entire multi-component assembly secured to the left side of the elongated member 110, as illustrated in Figure 3. The proffered corresponding structure includes link 130, and two additional links 134 and 138. In addition, the proffered corresponding structure literally includes the "nuts and bolts" of the multi-component assembly by identifying bolts 145 and 147, opening 140 in link 138, and the elongated slot 149 in link 134. Like *Chuminatta*, these are additional structural aspects that Section 112 does not contemplate as corresponding structure.

The construction of this claim term depends, in part at least, on the Court's construction of "connecting" discussed above. If "connecting" does not require a direct physical connection, as Jennings maintains, then link 130 is all that is necessary to perform the claimed function. Without doubt, link 130 converts rotational movement of the elongated member to a movement that operates the shift lever of the replacement transmission. Link 130 connects to the shift lever by serving as a link between the elongated member and the shift lever of the replacement transmission. Claim 1 does not recite that the means directly connects to the shift lever. Again, claim construction begins with the language of the claim, and if a direct physical connection was intended, claim 1, like the specification, would use the term "directly connecting."

### F. Jasper's construction of the "additional link" limitation of claims 5 and 7 imports limitations from the specification into the claims

Jennings and the Government agree Jasper's proffered construction is wrong. As the Government notes, the claims themselves say nothing about the movement of the "additional link" relative to the elongated member. Jasper imports this limitation from an exemplary embodiment (Figure 3) in the specification and violates the claim construction cannon prohibiting importing limitations from the specification into the claims.

### G. Contrary to the Government's position, the "kit" term in the preamble of claim 7 is non-limiting, and the Government's proffered construction does not even read on the preferred embodiment

Contrary to the Government's argument, the term "kit" appearing only in the preamble of claim 7 does not state a necessary and defining aspect of the invention. Rather, "kit" is nothing more than a convenient label for the elements making up the claim. Claim 7 is a simple combination claim where the invention is the replacement transmission, drive shaft and change-over linkage and its components. The label "kit" is wholly unnecessary. The preamble could have been appropriately written: "A combination of parts for use in replacing the transmission........"

The Government further argues that the patentability of claim 7 depends on the use of "kit" in the preamble. D. 41 at pp. 33-34. That argument is remarkable, if understood. The inference is, at least, that claim 7 would not meet the statutory requirements for patentable subject matter without labeling the claim with "kit." That is wrong. Using the term "kit" in the preamble did not turn an otherwise unpatentable combination into a patentable combination. The combination of elements comprising the replacement transmission, the drive shaft, and the change-over linkage and

its components as recited in claim 7, form patentable subject matter irrespective of how the combination is labeled.

The Government's proffered construction is inconsistent with claim 7, inconsistent with the specification, and imports the "packaged" limitation as well as the negative limitation prohibiting subassembly of any of the parts of the kit. Neither the claim nor the specification discloses that the parts of the kit are "packaged." The origin of this limitation is unclear. Indeed, packaging in a single package a replaceable transmission, drive shaft, and all of the other components of the kit would be challenging.

*Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1335 (Fed. Cir. 2004), in the context of claim construction, is extrinsic evidence and its probative value is suspect. But even if instructive as an example of the ordinary meaning of "kit," it suggests that a "kit" can be a collection of related items as opposed to a packaged set of items. See D. 41 at. p. 33.

The Government further attempts to import the negative limitation that prevents any of the parts from being in an assembled form. This construction contradicts claim 7 and the written specification. Claim 7 calls for a change-over linkage including a right side support member, a left side support member, an elongated member, a means proximate the right end, and a multi-component assembly. In a preferred embodiment, such as

shown in Figure 3, these subparts or components are assembled. These assembled parts form a part of the preferred embodiment of Figure 3 and form a part of a preferred embodiment of a kit. Hence, the Government's construction does not even read on the preferred embodiment. Rarely, if ever, is a claim construction correct that does not read on the preferred embodiment. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

### H. Method claims 11 and 12 are not limited to any particular sequence

It is undisputed that claims 11 and 12 have no sequence limitations. Furthermore, nowhere in the specification or in the prosecution history is there any disclaimer of any order or a statement indicating that a certain order is critical or even important.

Like the proffered constructions for "change-over linkage," "gear selection mechanism," etc., the Government's case rests on importing limitations from the specification into the claims. In doing so the Government rewrites the claims and narrows the claims in an effort to avoid infringement.

The basic rule of law should apply here. Unless the steps of a method expressly require an order, the steps are not normally construed to

require one. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003).

This the 6th day of April, 2007.

**COATS & BENNETT PLLC**
**Attorneys for Plaintiff**

By: ______________________________
Larry L. Coats
N.C. State Bar No. 5,547

Anthony J. Biller
N.C. State Bar No. 24,117
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone No.: (919) 854-1844
Facsimile No.: (919) 854-2084

## CERTIFICATE OF SERVICE

I certify that on this day, the 6th of April, 2007, a true and correct copy of the foregoing **JENNINGS' REPLY BRIEF ON CLAIM CONSTRUCTION** was served via the CM/ECF system to the following addresses:

Ken B. Barrett, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
ken.barrett@usdoj.gov
*Attorney for Defendant United States Post Office*

James M. Hinshaw, Esq.
Bingham McHale LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana 46204-4900
jhinshaw@binghammchale.com
*Attorney for Defendant Jasper*

James S. Ward
Ward & Wilson, LLC
2100 Southbridge Parkway, Suite 580
Birmingham, Alabama 35209
jward@wardwilsonlaw.com
*Attorney for Defendant Ready Built*

By: ______________________
Larry L. Coats
Attorney for Plaintiff